**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MARY A. JARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-00150-TWP-TAB |
| | ) | |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON SUMMARY JUDGMENT**

This matter is before the Court on Defendant's, Wal-Mart Stores East, LP ("Wal-Mart"), Motion for Summary Judgment (Dkt. 33). Plaintiff Mary A. Jarrett ("Ms. Jarrett") brought this action against her former employer, Wal-Mart, alleging it interfered with her Family Medical Leave Act ("FMLA") benefits and retaliated against her for use of FMLA benefits. For the following reasons, Ms. Jarrett's claims fail and Wal-Mart's Motion for Summary Judgment is **GRANTED**.

**I. BACKGROUND**

Ms. Jarrett began working for Wal-Mart on September 19, 2003. She held a variety of positions, but during the relevant time period she was a Customer Service Supervisor at Store 884 in Shelbyville, Indiana. Wal-Mart provides eligible and qualified associates with up to twelve weeks of continuous or intermittent leave pursuant to the FMLA. Wal-Mart's FMLA policy is available to all associates through the corporate intranet system. Ms. Jarrett specifically received training on Wal-Mart's FMLA policies during her employment orientation and by completing courses on Wal-Mart's computer based learning program. Wal-Mart also had an Attendance and Punctuality Policy. This policy provided that associates with excessive absences

or incomplete shifts would be subject to disciplinary action up to, and including, termination on a tiered system. Associates with more than three unexcused absences in a six-month period received a verbal coaching. Associates continue to advance to the next coaching level for each additional unexcused absence within a six-month period. "Coachings" remain active for a period of twelve months. Ms. Jarrett acknowledged her familiarity with and awareness of Wal-Mart's FMLA and attendance policies.

Ms. Jarrett took numerous leaves of varying lengths under FMLA. Specifically, between August 2007 and April 2009, Ms. Jarrett requested and received FMLA leave on three separate occasions and at the conclusion of each leave, she returned to the position she previously held. Wal-Mart maintains a coaching for improvement policy and Ms. Jarrett received numerous coaching's for attendance violations. Relevant to this matter, in October 2009, Ms. Jarrett received a verbal coaching after she accrued nine absences within a six-month period. On December 16, 2009, Ms. Jarrett received a written coaching for two additional absences. On September 24, 2010, Ms. Jarrett received a "Decision Making Day" coaching for poor attendance because she had accumulated ten additional absences during the preceding six months. A "Decision Making Day" coaching is the final disciplinary level before termination and coaching remains active for a period of twelve months. Ms. Jarrett's "Decision Making Day" coaching was set to expire on October 20, 2011.

On April 20, 2011, Ms. Jarrett submitted FMLA certification paperwork to Wal-Mart Personnel Coordinator Angela Strasser ("Ms. Strasser"). Ms. Jarrett requested a continuous leave of absence from April 11 to May 1, 2011. She contemporaneously requested an intermittent leave of absence from April 14 to September 11, 2011. Ms. Jarrett's physician estimated that Ms. Jarrett would require intermittent FMLA leave for one anxiety/depression

related episode per month, each lasting three days in duration. Store Manager Treva Cunningham ("Ms. Cunningham") granted Ms. Jarrett's request for FMLA leave on May 10, 2011. Based on Ms. Jarrett's work schedule, Ms. Strasser calculated that Ms. Jarrett was entitled to 391.20 hours of FLMA leave in 2011.

Ms. Jarrett does not dispute Wal-Mart's calculation of her FMLA leave. Wal-Mart calculates that Ms. Jarrett utilized 68.26 hours in April 2011, 117.41 hours in May 2011, 117 hours in June 2011, 51.38 hours in July 2011, and 42 hours between August 1 and 6, 2011. By August 6, 2011, Ms. Jarrett had utilized 403.58 hours of FMLA leave. Following August 6, 2011 and through September 1, 2011, Ms. Jarrett missed an additional 81 hours of work and, according to Wal-Mart, accrued 12 days of unexcused absences. Ms. Jarrett was terminated for excessive absenteeism on September 3, 2011.

On August 4, 2011, Ms. Strasser sent Ms. Jarrett, by certified mail, correspondence that her FMLA leave would expire in 37 days. The correspondence was returned to Wal-Mart as unclaimed. On August 17, 2011, Ms. Strasser sent Ms. Jarrett, by certified mail, correspondence explaining that her FMLA leave expired on August 6, 2011, and that employees on an FMLA leave longer than 12 weeks were not guaranteed their previous position. The correspondence was returned to Wal-Mart as unclaimed. Ms. Strasser re-sent the August 17, 2011, correspondence via standard United States mail to ensure delivery would not be contingent upon receiving a signature.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. DISCUSSION

Under the FMLA, "covered employers" must provide an "eligible employee" with "12 workweeks of leave in a 12-month period" for certain enumerated reasons. *Stoops v. One Call Communications, Inc*., 141 F.3d 309, 311–12 (7th Cir. 1998). The FMLA also prohibits an employer from interfering with or retaliating against an employee's attempt to exercise her right to FMLA leave. *See Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010); *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008). Retaliation requires proof of discriminatory intent, while interference requires only proof that the employer denied an employee's benefits under the FMLA. *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443 (7th Cir.

2011). Ms. Jarrett alleges that Wal-Mart interfered with her right to exercise FMLA leave by terminating her employment before her approved "return to work" date of September 11, 2011. She also alleges that Wal-Mart retaliated against her when it terminated her employment and denied reinstatement.

**A.     Interference Claim**

The FMLA states that it is unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2612(a)(1). Under Seventh Circuit precedent, "[t]o prevail on an FMLA interference claim, an employee need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required." *Burnett v. LFW Inc*., 472 F.3d 471, 477 (7th Cir. 2006) (citation omitted). Such a claim requires the employee to establish five elements: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Id.* (citations omitted). Here, the parties dispute whether Ms. Jarrett can establish the fifth element.

Wal-Mart contends it is undisputed that Ms. Jarrett was entitled to 391.20 hours of FLMA leave and that she utilized 403.58 hours as of August 6, 2011. Thus, Wal-Mart argues, it did not deny Ms. Jarrett any of her benefits as she utilized more than her FMLA entitlement. To the contrary, Ms. Jarrett contends that Wal-Mart provided her with a return-to-work date of September 11, 2011, and its failure to reinstate her to employment on September 11, 2011, interfered with her FMLA rights.

The FMLA and interpreting regulations define three types of leave: (1) continuous leave, or one block of leave of twelve weeks or fewer; (2) intermittent leave, which is taken in separate

periods of time due to a single illness or injury; and (3) reduced leave schedule, a plan under which the employer reduces the employee's normal work hours, usually to a part-time basis. 29 U.S.C. 2612(a)(1); 29 U.S.C. § 2611(9); 29 C.F.R. § 825.202; 29 C.F.R. § 825.203. Intermittent leave, by definition, is not meant to be taken as one continuous block of time. Instead, intermittent leave allows employees to use their 12 weeks of FMLA leave as needed for a single illness or injury.

Ms. Jarrett cites an unpublished Sixth Circuit opinion to support her position that Wal-Mart set her return date of September 11, 2011, and she was entitled to reinstatement after that date. In *Wilkerson v. Autozone, Inc.*, 152 Fed. Appx. 444 (6th Cir. Oct. 17, 2005), the plaintiff requested continuous FMLA leave following the birth of her child. Despite that the plaintiff had already taken 110 hours of intermittent FMLA leave, the employer told the plaintiff her FMLA leave would include six weeks before the birth of the baby and six weeks after the birth of the baby. *Id.* at 445. The plaintiff began her continuous leave of absence on November 17, 2002, gave birth on December 17, 2002, and planned to return to work six weeks later on February 2, 2003. *Id.* However, the plaintiff's yearly FMLA leave was exhausted on January 19, 2003, but at no time did the employer notify the plaintiff that her FMLA would expire, or had expired, on that date. *Id.* The employer called the plaintiff on January 22, 2003 to inquire about her returning to work early. The plaintiff's doctor cleared her to return to work on January 23, 2003, but the plaintiff was not informed of this fact despite repeatedly calling her employer. *Id.* at 447. The plaintiff returned to work on February 2, 2003, when she was terminated for failing to report to work on January 26 and 27, 2003.

After a trial, a jury returned a verdict for the plaintiff on her FMLA interference claim and the employer appealed. The employer argued that the jury was improperly instructed that

the plaintiff returned from FMLA leave on February 2, 2003, when her FMLA leave actually expired two weeks earlier. *Id.* at 449. The Sixth Circuit found, in part, that the jury could have concluded on equitable estoppel grounds that the plaintiff was entitled to reinstatement on February 2, 2003, because it was undisputed that the employer gave the plaintiff that date and never informed her that her FMLA benefits were exhausted on an earlier date. *Id.* at 450. Thus, the court held, "[i]f [the plaintiff] had a right to reinstatement on February 2, 2003, [the employer] obviously interfered with or denied the exercise of or the attempt to exercise that right." *Id.* (internal quotation and alterations omitted).

Ms. Jarrett argues that her case is analogous to *Wilkerson*. Specifically, she argues that Wal-Mart gave her a return date of September 11, 2011, which was confirmed in an August 4, 2011 letter. Thereafter, Wal-Mart terminated Ms. Jarrett eight days before her return date. The Court disagrees with Ms. Jarrett that *Wilkerson* supports her position. It is undisputed that Ms. Jarrett's FMLA request form is blank where the "return date" should be written; a point Wal-Mart argues underscores the intermittent nature of Ms. Jarrett's approved leave and that her leave was not continuous in nature. *See* Dkt. 36-2 at 7. Rather, the form lists a "start date" of April 14, 2011, and an "end date" of September 11, 2011. The form is also clearly marked that the leave approved was "FMLA—Intermittent." Dkt. 36-2 at 7. This clearly means that Ms. Jarrett's approved intermittent FMLA leave—i.e., her ability to take blocks of FMLA leave for her single illness—ended on September 11, 2011. Because she did not seek a continuous leave like the plaintiff in *Wilkerson*, Wal-Mart did not misrepresent the amount of FMLA leave available to Ms. Jarrett when it approved her intermittent FMLA leave on April 20, 2011. Rather, Ms. Jarrett's subsequent use of her intermittent FMLA leave resulted in the exhaustion of her benefits before the end of the approved period.

Further, unlike in *Wilkerson*, Wal-Mart did not misrepresent the amount of FMLA leave available to Ms. Jarrett when it approved her intermittent FMLA leave on April 20, 2011, because it could not know the total amount of hours Ms. Jarrett would eventually take. Neither was Wal-Mart required to inform Ms. Jarrett of the exact number of hours, days, or weeks of leave available to her at the time her leave was approved. *See* 29 C.F.R. § 825.300(d)(6). The applicable regulation states:

> If the amount of leave needed is known at the time the employer designates the leave as FMLA-qualifying, the employer must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement in the designation notice. If it is not possible to provide the hours, days, or weeks that will be counted against the employee's FMLA leave entitlement (such as in the case of unforeseeable intermittent leave), then the employer must provide notice of the amount of leave counted against the employee's FMLA leave entitlement upon the request by the employee, but no more often than once in a 30–day period and only if leave was taken in that period.

*Id*. Here, although Ms. Jarrett provided Wal-Mart with a set period of time during which she would utilize intermittent FMLA leave, the amount of leave actually needed and on what specific dates was unknown.

Ms. Jarrett points to the August 4, 2011, letter entitled "Approaching End of Intermittent LOA Letter," as misleading and evidence that she was entitled to leave until September 11, 2011. On one hand, the Court agrees that the letter could have been misleading, in that as of August 4, 2011, Ms. Jarrett only had two days' worth of intermittent FMLA benefits remaining that could have been utilized on any date through September 11, 2011. Without more detail in the letter explaining that fact, one interpretation of the letter could be that Ms. Jarrett had enough intermittent FMLA benefits to last until September 11, 2011. But this argument is unavailing. First, it is undisputed that Ms. Jarrett never received the August 4, 2011 letter, despite Ms. Strasser sending it via certified mail, return receipt requested. Ms. Jarrett cannot claim she was

misled by a letter she had never seen before. Second, that interpretation of the letter belies the definition of intermittent leave, as well as FMLA benefits in general. Ms. Jarrett has acknowledged her understanding of the FMLA, in that it provides only the equivalent of 12 weeks of an employee's work schedule. It is unreasonable to interpret Wal-Mart's approval of the intermittent use of FMLA leave between April 14 and September 11, 2011, as an approval of an unlimited amount of FMLA leave between those dates.

In short, while Wal-Mart approved the time frame of April 14 through September 11, 2011, Ms. Jarrett still was entitled to only 12 weeks' of FMLA benefits to be utilized within that time frame. Ms. Jarrett utilized her total FMLA benefits entitlement by August 6, 2011. Wal-Mart did not interfere with her ability to utilize these benefits—including reinstatement—and she did not seek notice of the amount of leave counted against her FMLA leave entitlement, triggering Wal-Mart's notice requirements. *See* 29 C.F.R. § 825.300(d)(6). Ms. Jarrett's assertion that she was capable of returning to work on August 6, 2011 if only she had been aware she had used all of her FMLA benefits, fails to support her cause. Intermittent FMLA leave assumes that an employee will only take blocks of time for an illness and in the interim continues working as scheduled. If Ms. Jarrett was able to return to work on August 6, 2011, she could have done so and Wal-Mart had no burden or requirement to seek her return. For these reasons, Ms. Jarrett's interference claim fails and Wal-Mart's Motion is **GRANTED**.

**B.    Retaliation Claim**

"An employee who alleges that her employer retaliated against her for exercising her rights under the FMLA can proceed under the direct or indirect methods of proof familiar from employment discrimination litigation." *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009). Ms. Jarrett proceeds under the direct method of proof, meaning she must "demonstrate that her

employer intended to punish her for requesting or taking FMLA leave." *Id.* To establish an FMLA retaliation claim under this method, Ms. Jarrett must present evidence of: "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 824 (7th Cir. 2011).

Here, Ms. Jarrett easily satisfies the first two prongs: she took intermittent FMLA leave and was terminated from her position. To establish the causal connection, Ms. Jarrett cites to several incidents she contends establish a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination. *See Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 751 (7th Cir. 2009). First, Ms. Jarrett argues that Wal-Mart's handling of her intermittent leave shows intentional discrimination, because Wal-Mart set Ms. Jarrett's return date for September 11, 2011, confirmed her end date of September 11, 2011 on August 4, 2011, but decided on August 6, 2011, that her leave had expired. She argues, "[a] reasonable jury could conclude that Wal-Mart, at some point in time, recognized its error and intentionally chose to terminate [Ms.] Jarrett as opposed to providing her reinstatement at the end of her FMLA leave on September 11, 2011, as mandated by the Act." Dkt. 36 at 13. Second, Ms. Jarrett argues that Assistant Manager Cindy Hatfield's email asking Ms. Cunningham if she could "terminate" Ms. Jarrett "now," is evidence that they actively and intentionally sought to terminate Ms. Jarrett's employment. Third, she argues that the August 17, 2011 letter that stated Ms. Jarrett's FMLA leave ended on August 6, 2011 and had been modified to strike language about an employee returning to work, is evidence of a retaliatory scheme to deny Ms. Jarrett reinstatement.

The Court finds that this evidence does not establish a genuine issue of material fact on Ms. Jarrett's retaliation claim. Despite that Ms. Jarrett does not identify the alleged error Wal-Mart made and covered up, it is undisputed that by August 6, 2011, Ms. Jarrett had exhausted her FMLA benefits. Further, the August 17, 2011, letter and correspondence between Ms. Hatfield and Ms. Cunningham is not evidence of intentional discrimination. It is undisputed that Ms. Jarrett had an active "Decision Making Day" disciplinary coaching, which meant that additional unexcused absences could result in termination. Also, Wal-Mart's FMLA policy states that when an employee exceeds her FMLA benefits, she no longer has a right to reinstatement. Finally, as discussed above, by definition intermittent leave does not have a return date, thus, the modification of the August 17, 2011 letter does not raise an inference of retaliatory conduct. Therefore, Ms. Jarrett has not created a genuine issue of material fact of retaliatory conduct under the FMLA. Wal-Mart's Motion is **GRANTED**.

## IV.  CONCLUSION

Accordingly, Wal-Mart's Motion for Summary Judgment (Dkt. 33) is **GRANTED**. Ms. Jarrett's claims under the FMLA for interference and retaliation are **DISMISSED**.

**SO ORDERED.**

Date: __12/19/2013__

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Peter T. Tschanz
BARNES & THORNBURG LLP
peter.tschanz@btlaw.com

Susan M. Zoeller
BARNES & THORNBURG LLP
susan.zoeller@btlaw.com

Stephen E. Schrumpf
BROWN DEPREZ & JOHNSON, P.A.
ses@shelbylaw.com